May Term, 1858.

RAMSEY v. FOY.

---

RAMSEY and Another *v.* FOY.

Statutes in restraint of personal liberty must be strictly construed, with reference to the current of judicial decision, and to the practice existing at the time of and before their adoption.

In the practice under the statute of 1852 touching the proceedings upon the writ in the nature of a *ne exeat regno,* a complaint, showing a *prima facie* case, as well as an affidavit and a bond, must be filed before the order of arrest can issue.

If such writ issue without a complaint having been filed, it should be quashed.

But in this case, no motion was made to quash the writ; and the jury found specially that the defendants did not intend to leave the state, &c.; that the debt was not due when the proceeding was commenced, but that it was due at the time of the verdict. *Held,* that the writ should have been set aside and the defendants discharged on the return of the verdict—which, in the absence of an appearance, would leave the case standing as if a complaint had been filed and no process issued, to be continued of course.

But the defendants in this case having appeared, a judgment on the verdict for the amount found due, was affirmed.

APPEAL from the *Miami* Court of Common Pleas.

HANNA, J.—On the 8th day of *May,* 1855, *Foy* filed his complaint on a note executed by the appellants to him on the 29th day of *October,* 1853, and due twenty months after date. The note was not then due; but the complaint

Wednesday, June 23.

was in the usual form, and did not contain any allegation that the defendants were about to leave the state, &c.

The agent of *Foy*, also, at the same time, filed his affidavit containing the allegation that the defendants were about to leave the state without performing or making provision for the performance of the contract, &c.; and obtained a writ of *ne exeat*, upon which the appellants were arrested and gave special bail.

At the next term of the Court commencing on the second day of *July*, the defendants demurred to the complaint, and assigned for cause that it did not contain facts sufficient, &c.   The demurrer was overruled.

The defendants thereupon filed what they call their answer to the affidavit of the plaintiff.   That answer admits that at the time of the issuing the writ in the case, they were indebted to the plaintiff in the sum of 837 dollars and 28 cents, by note dated *October* 29, 1853, and due twenty months after date.   But they denied that they were about to leave the state, &c., and also denied fraud, &c.

No other process issued except the order of arrest.

A jury was empannelled to try the issues joined.   They returned no general verdict, but found upon certain points or questions submitted to them, which were as follows:

"Were *Henry B.* and *Robert Ramsey* on the 8th day of *May* last, about to leave the state of *Indiana* without performing or making provision for the performance of the contract entered into with *Phineas Foy*, taking with them property, money, credits or effects subject to execution, with intent to defraud the plaintiff *Foy*?"   Answer, "No."

Were *Henry B.* and *Robert Ramsey* indebted to *Phineas Foy*, on the 8th day of *May*, 1855, the amount of a note for 837 dollars and 28 cents, or any part thereof?   If so how much?"   Answer, "No."

"Do *Henry B.* and *Robert Ramsey* now owe *Phineas Foy* the amount of a note presented in this case, or any part thereof?   If so how much?"   Answer, "Yes; their indebtedness on said note, being the note sued on, now amounts, with interest, to the sum of 838 dollars and 34 cents."

Upon this, the defendants moved to dismiss the cause, which motion was overruled.

The defendants then made a motion for a new trial, which was also overruled, and judgment rendered for the plaintiff for 838 dollars and 34 cents, and against him for costs.

Three errors are assigned—

1. In reference to overruling the demurrer.

2. Upon the refusal to dismiss.

3. In regard to the rendition of judgment upon the verdict.

It is argued that to authorize the order for arrest, upon a debt not due, the complaint ought to contain the necessary averments not only to show the indebtedness, but also to show that the defendants were about to leave the state without performing or making provision for the performance of the contract, taking with them property, &c., subject to execution, with intent to defraud the plaintiff.

The present statute upon the subject is extremely indefinite, and leaves much room for construction as to the proper practice under it. To determine that practice, it is necessary to advert for a moment to the former practice and legislation governing writs of *ne exeat*.

In *England*, this writ was originally a state writ; and the use of it in civil suits appears to have been confined to chancery proceedings, in which it was resorted to to prevent the party from departing without the realm, taking with him property, unless he first secured the performance of such order as the Court might make in the suit pending. It was issued only upon bill first filed, and could not be made use of where the demand was entirely at law, or upon agreements the time for the performance of which had not expired. 1 Black. Com. 266, n. 20.—2 Kent's Com. 31, 32.—2 Story's Eq. Juris. §§ 1470 to 1475.

By our revision of 1824, regulating the practice in chancery, "the Court in term time, or the circuit judge, or the two associates in presence of each other, in vacation," were authorized to grant the writ, after bill filed, supported by oath, and bond given in such sum as should be ordered by

May Term,<br>1858.<br><br>RAMSEY<br>v.<br>FOY.

the Court or judge; and if the defendant, by answer or otherwise, satisfied the Court that there was no reason for his being restrained, or if he gave surety for the perform-. ance of the decree, the writ could be discharged. R. S. 1824, p. 288. The same provisions were continued in the next revision. R. S. 1831, p. 396.

By an act approved *February* 17, 1838, a change was made, so as to authorize the granting of the writ as well where the debt was not due as where it was due; and it was not necessary that the demand should be of a purely equitable character. There had to be a bill or petition and a bond filed, and an affidavit of the truth, &c. The writ was issued on the order of the Court, or president, or two associate judges, and the amount of bail required was fixed by such officer, &c. It was returnable in the Circuit Court, and contained a summons to the defendant to appear in the Court and answer the bill. Upon service and return, the Court proceeded to hear the case as other chancery cases, if the time for performance of the duty, &c., of the defendant had expired; but the Court might, nevertheless, proceed to determine whether the said writ ought not to be quashed. R. S. 1838, pp. 417, 441.

There was no provision inserted in the revision of 1843 authorizing such writ.

In 1847, an act was passed very similar to that of 1838 in many of its features, but containing the additional provision that the writ should issue only for debts or demands not actually due, and the bill or petition must allege that the defendant was about to leave the state, taking with him property subject to execution, or money, &c., with intent to defraud the plaintiff. An affidavit of the truth, &c., was also made. This act also contained a provision that the plaintiff should prove to the satisfaction of the Court or jury all the material matters alleged in the affidavit. Acts of 1847, p. 81.

These additional provisions were inserted in the act of 1847, we suppose, that it might conform to the act abolishing imprisonment for debt. Acts of 1842, p. 68.

This had been the history of the legislation in this state

upon the subject, from 1824 until the taking effect of the statute upon which this proceeding is based.

It appears, then, by all the statutes referred to, that the writ issued, or was ordered, by the Court or a judge, and the bond to be executed by the plaintiff, or the security exacted from the defendant, was taken and approved by the judge, or the amount thereof by him fixed; and further, that the writ was discharged if by the answer, or otherwise, the defendant satisfied the Court that he ought not to be restrained; and that it was not granted except upon bill or petition and affidavit filed.

The present statute is this: " Actions may be commenced upon any agreement in writing, before the time for the performance of the contract expires, when the plaintiff or his agent shall make and file an affidavit with the clerk of the proper Court, that the defendant is about to leave the state without performing," &c., and taking with him property, &c., with intent to defraud the plaintiff. 2 R. S. p. 185. The next section, upon such affidavit being filed, gives the clerk power to issue an order of arrest and bail, directed to the sheriff, " which shall be issued, served and returned, in all respects, as such orders in other cases." The plaintiff files a bond, which the clerk approves, &c.

It is thus apparent that the original purpose of the writ of *ne exeat regno*, is altogether lost sight of, in the change of practice and legislation upon the subject. Upon being no longer resorted to as a writ in favor of the state, it was used in aid of proceedings in chancery, to secure the performance of such orders and decrees as might be made in a suit pending; and from that it was made to apply to debts, demands, or agreements, whether due or not, and whether purely equitable or not; and now, it applies only, as regulated by this statute, to agreements in writing, the time for the performance of which has not expired. And from requiring the writ to be issued by the Court, or a judge, and the bail to be fixed by him, the legislation has been such as to now confer upon a mere clerk this power of issuing the writ and approving the bond, &c.; and thus, without even being required to possess judicial knowledge,

May Term,
1858.

RAMSEY
v.
Foy.

a clerk holds the power to deprive a citizen of his liberty because of his alleged indebtedness.

Every statute in restraint of personal liberty, ought to be strictly construed, and construed too with reference to the current of decisions, and the usual practice which existed at the time of, and before, its adoption.

Keeping in view this principle, in considering this statute, we are of opinion that in the practice under it, a complaint in conformity therewith should be filed by the plaintiff, as well as an affidavit and bond; and that, therefore, the writ in the case at bar was irregularly issued, and, if a motion had been made, should have been quashed. In this we are strengthened by a strict construction of the first sentence of the statute quoted, when considered with other statutes. " Actions may be commenced," &c. Now, it is provided generally that a civil action shall be commenced by filing in the office of the clerk a complaint, and causing a summons to issue thereon. 2 R. S, p. 35. Then, to commence an action, not only must a complaint be filed, but a summons issue. We think the provisions must be construed together, for the writ is to issue, be served and returned, as in other cases, and there is no other case in which an order of arrest can issue before a complaint has been filed. Then, if the complaint must be filed, it should certainly make a *prima facie* case, to deprive a man of his liberty. Otherwise, the writ should not issue, or if issued, should be quashed.

In the case at bar, no motion having been made to quash the writ, it should have been set aside, and the defendants discharged from it, upon the return of the finding of the jury; and the case would then have stood as if the complaint had been filed and no process thereon issued, and would have been continued, of course, for process, but for the appearance of the defendants. This appearance is shown by the record to have been full, first, by filing a demurrer, which was properly overruled, because when filed the time for the performance of the contract was past and the complaint was sufficient to authorize a judgment for the amount due on the note, although insufficient to jus-

tify an arrest, &c.; and, secondly, by filing an answer in the form it was—admitting that the note sued on was at the time of the appearance and answer due and owing.

*Per Curiam.*—The judgment might, perhaps, have carried a part of the costs; but as there are no cross-errors assigned, the judgment will be affirmed, with 1 per cent. damages and costs.

*J. A. Beal,* for the appellants.