## THE STATE *v.* WILSON AND DOWNING.

A building 21 feet by 15  placed on a market garden and used for storing the  tools and agricultural implements used there, such seeds as were sown there, and  manures employed in the garden, is not a warehouse, nor a granary, within  the  meaning of the statute, which punishes as a distinct offence stealing in a warehouse or a  granary after entering in the night time, or breaking and entering in the day time.

INDICTMENT for entering the warehouse of A. K. Warren in the night time, and stealing one bushel of rye and a bag.   A second count charged the entry to have been into a granary and stealing the same goods.

To prove the character of the building from which the goods were supposed to be stolen, the State introduced A. K. Warren, who testified that the building, 21 by 14 1-2 or 15 feet, partly ceiled and partly plastered, was placed in June of this year upon a fifteen acre piece of land used by him as a market garden and was the only building upon it ; that he used it for storing the tools and agricultural implements used there, such as plows, cultivators, weeders, and garden sowers, pitchforks, manure forks, axes, picks, nails and spikes ; and for storing such grain and seeds as he sowed, as beet and carrot seeds, large quantities of turnip seed, squash and cucumber seeds, water-melon and musk-melon seeds, a large quantity of peas and beans and potatoes, together with rye and grass seed for sowing, and such fertilizers as powdered bone in barrels, bone flour, and flour of oyster shells, and other things of a similar nature.

The court instructed the jury that this evidence tended to prove that

this building was a warehouse, to which the respondents excepted, contending that there was no evidence on which the jury could find the building to be either a warehouse or a granary.

The jury having returned a verdict of guilty against both respondents they moved for a new trial for error in the instructions aforesaid.

*Frink*, for the respondents.

The term warehouse signifies a building for the temporary deposit of goods of others intended for removal and sale in the regular course of commercial dealing, and not for the deposit, storage or safe keeping of one's own goods. *Owen* v. *Boyle*, 22 Maine 47; 1 Bishop, Cr. Law, sec. 577. The case finds that the building in question was employed for storing property of its owner and occupant, and in the cultivation of his ground, for agricultural and not mercantile purposes; and particularly for storing tools of his occupation and seeds for his farm.

*Clarke, A. G.*, and *Bell*, Solicitor for the State.

The word *warehouse* in its popular acceptation signifies an apartment or building for the temporary deposit of goods; and the same, according to the better opinion, is its legal meaning; and of a similar meaning to warehouse is the word storehouse; 1 Bishop, Cr. Law, secs. 177, 178; and a storehouse is defined to be a building for keeping grain or goods of any kind, a magazine, a repository, a *warehouse*. A warehouse is defined by the standard lexicographers "a place for storing merchandise." A granary is defined to be "a place for storing corn or grain; a storehouse or repository of grain after it is thrashed; a corn barn."

The term "warehouse" in the case from the 22 Maine Rep. is used in a restricted sense as appears by the head note. The authorities show that the words *warehouse, storehouse, granary*, are used in no such restricted and narrow sense as is maintained by the respondents. Under the English statute against breaking and entering any shop, warehouse, or counting house, it was held in *Reg.* v. *Carter*, 1 Ca. Kirwan, 173, that an ordinary blacksmith's shop, containing a forge and used as a workshop only, not inhabited nor attached to any dwelling house, fell within the definition of a shop in the act. The owner of this building was gardening on a large scale for the neighboring market; having no other building on his land he put there the one in question for the storing of his tools, seeds, grain, and manures; and it may properly be called *storehouse, warehouse*, or *granary*.

PERLEY, C. J. This indictment is founded on the 10th section of ch. 229, Comp. Stat., which was enacted in 1850, and is in the following terms: "If any person shall in the night time break *or* enter, or in the day time break *and* enter, any dwelling house or out house adjoining thereto, or any office, bank, shop, store, warehouse, barn, granary, or mill; any meeting house, court house, town house, college, academy, school house, or other building erected for public use; or any vessel ly-

ing within the body of any county, and therein *commit larceny*, he shall be punished by confinement to hard labor for a term not exceeding five years."

The indictment is for entering in the night time and stealing one bushel of rye and a bag, one count charging the larceny to have been committed in the warehouse of A. K. Warren, and the other, in the granary of A. K. Warren; and the question is, whether the building described in the case is a warehouse or a granary within the meaning of those terms as used in the statute.

The larceny contemplated in the statute must be for goods under twenty dollars in value, because simple larceny of goods to the value of twenty dollars and upwards is an offence punished by confinement to hard labor for not less than two nor more than five years; and also because by the preceding section of the statute an entry into any building in the night time with intent to steal to the amount of twenty dollars would be a crime punishable by imprisonment for a term of not less than one, nor more than seven years. The evident effect of the statute is to aggravate the crime of simple larceny for stealing to a smaller amount than twenty dollars into a state prison offence if the larceny is committed in one of the buildings named in the statute after entering in the night time, or breaking and entering in the day time; and the question is, not whether the defendants shall be punished for stealing this bushel of rye and the bag, but whether the character of the larceny is changed into the higher offence because it was committed in a warehouse or a granary after an entry in the night time. The essential character of the statutory offence is larceny. The entry of the building and the circumstance that the theft was committed in it are but incidents; for on this indictment the defendants might have been convicted of the simple larceny; and if the verdict had found the value of the property stolen, they might be sentenced on this conviction, though it should be held that the case is not within the statute. Hale's Pleas of the Crown, 302, 357; Roscoe's Ev. 91, 330; *Com.* v. *Hope,* 22 Pick. 1; *Larned* v. *Com.* 12 Met. 245; Anonymous, 31 Maine 592; *State* v. *Cocker,* 3 Harrington 554; *Com.* v. *Carrol,* 3 Mass. 490.

Before the Revised Statutes there does not appear to have been any law of this State like that on which this indictment is founded. The statute of 1812, incorporated in the act of 1828, punished breaking and entering in the day time, and breaking or entering in the night time into certain enumerated kinds of buildings with intent to commit rape, &c., or any other felony, by imprisonment to hard labor. The Revised Statutes for the first time introduced the law on which this indictment is founded, except that the Revised Statutes did not name barns and granaries among the buildings, in which the statutory offence might be committed. *Barns and granaries* were added to the list by the statute of 1851; and by the statute of 1858 the law was further extended so as to reach certain buildings belonging to railroads.

By this reference to the course of legislation on the subject it very clearly appears that the legislature intended when they created this new statutory offence to describe plainly and clearly by their appropriate

names the buildings meant in the act. Because other buildings than those enumerated and named in the statute might be supposed to have the same general character, to be used for the same general purpose, and to need the same protection from the law, it was not intended that it should be left to the courts by any enlarged and equitable construction to extend the terms used so as to include any other buildings than those which are enumerated by their appropriate names in the statute. It is the popular name and designation, and not the general character and use of the building, which must govern the interpretation of the law. They did not say "any building," as they did in the preceding section of the statute ; nor "any building in which valuable property may be stored and kept," leaving it for the courts to inquire into the general character and use of the building ; but they designated the buildings meant by their appropriate names ; and no building not denominated a warehouse or granary as its proper and distinctive name can be construed to be a warehouse or a granary within the meaning of the statute.

The act of 1851 added to the former list of buildings *granaries,* from which the inference is decisive that a granary was not a store, warehouse, or any other building named in the former law. In *State* v. *Bailey,* 10 Conn. 145, the court say : "At the revision of the statutes school houses were included in the enumeration of buildings in addition to outhouses, a circumstance very clearly implying that the legislature did not consider a school house to be an outhouse." By the same rule it very clearly appears that the legislature did not consider a granary to be a store or warehouse within the meaning of the statute. But if we were to follow the definitions found in dictionaries, it would be easy to show that a granary is a warehouse, and a store is a warehouse and *vice versa.* For a store is defined to be a magazine, a storehouse, a warehouse ; and a storehouse is "a building for keeping grain or goods of any kind." Tracing the meaning of the words used in the statute through these definitions, the term store alone would be sufficient to cover all the buildings named in this clause of the statute and many more. A store is defined to be a storehouse, and a storehouse a warehouse, a building for keeping grain or goods of any kind. A warehouse, therefore, according to these definitions, is a building in which any kind of goods, wares, or merchandise is kept and stored, and different kinds of corn and grain are goods, wares, and merchandise ; they are kept and stored in a granary. Why, then, is not a granary a warehouse or a store within the meaning of the statute? Simply because a warehouse is not the appropriate popular name of a building such as is usually devoted to the storage of corn and grain ; and therefore to bring granaries within the statute it was necessary to add them by name to the former list.

It is maintained in behalf of the State that this building was a warehouse and also a granary within the meaning of the statute ; and that in description and character it answers to the definition of a warehouse and also of a granary ; and I think the counsel are quite right in the position which they take, that the definitions quoted from dictionaries apply equally well to a warehouse and a granary. But to my mind it

is quite clear that a warehouse is not a granary, nor a granary a warehouse, in the sense of those words as used in the statute. The fact that by the statute of 1851 granaries were added to the former list, which contained warehouses, shows that the two kinds of buildings were regarded as distinct and separate things; and the circumstance that this building answers equally well in character to the definitions of a warehouse and of a granary goes far to satisfy me that it does not answer to either of them within the meaning of the statute; because in the sense of the statute a warehouse is not a granary, nor a granary a warehouse.

In *Com.* v. *White,* 6 Cush. 181, the question was whether the room in a railroad depot, in which the larceny was committed, was an "office" within the meaning of that word in the Massachusetts statute, which created the offence. Fletcher, J., delivering the opinion of the court, says: "The definition of the term *office* given by lexicographers, as a place or apartment for the transaction of business, is so very general as to afford little or no aid. The word is used in the statute as distinct from shop, warehouse, outhouse, and other buildings particularly mentioned in the statute. The meaning of the term can be better explained by reference to its general and popular use and application than by any formal definition." The statute of Massachusetts enumerated different kinds of buildings, like shops, warehouses, and outhouses, as ours does, and was like ours in all respects, which bear on the question of interpretation; and this case of *Com.* v. *White* is a very direct authority to the point that, on the question what buildings are meant in our statute, we are to be governed, not by the general use and character of the buildings, or the loose definitions to be found in dictionaries, but by the common and popular meaning of the terms by which the buildings are named and designated in the statute.

The *State* v. *Canney,* 19 N. H. 135, was an indictment on this statute; and it was there held that a *shop* is not a *store* within the meaning of the act, which must be regarded as a direct authority that each kind of buildings named in the statute is a different and distinct thing; and that the building named in an indictment must be shown to be a building commonly and generally known by the particular name given to it in the statute.

To make a building a granary it must be devoted to the storage of grain; the principal and main use of it must be the storage of corn and grain. No corn or grain was stored in this building except such as was intended for sowing in the garden. It was a small, slight building set on the garden for the convenience of keeping in it such miscellaneous things as were used in carrying on the garden, tools, seeds, manures, &c. Keeping in it, among other things, small quantities of seed grain to be used on the garden would not make it a granary, as a distinct thing from shops, stores, warehouses, barns, &c., named in the statute, any more than a few bundles of hay kept in it for the horses worked there would make it a barn. I conclude that this building was not a granary within the meaning of the statute.

Was it then a warehouse? The warehouse meant in the statute must be a building different from a shop, store, barn, mill, or granary men-

tioned in the same statute, and distinguished from them by the appropriate name of a warehouse. A warehouse in the more limited sense is the building or place in which a warehouse-man deposits the goods of others in the course of his business; and this limited construction was given to the word in *Owen* v. *Boyle*, 22 Maine 47. But in common discourse I understand the word is applied to buildings used for the temporary storage of merchandise before it is put into market for sale, or put in the course of transportation by sea or land to another place, though the buildings may not belong to a warehouse-man, but to the owners of the goods: such are the buildings in which manufacturers keep their goods for a time before they put them into market for sale or send them abroad. It would seem to be the opinion of Bishop as cited by counsel, that the common and legal understanding of the term is the same; that in legal construction as well as in the common understanding of the word it would extend so as to include buildings of individuals or corporations where they store their own goods temporarily in distinction from the places where they are offered for sale or kept by the owners permanently till they are needed for use. If we give to the word "warehouse" this more extended meaning and hold that it is not limited in signification to the building of a warehouse-man, but includes all buildings used for the temporary storage of merchandise till it is put into market, still the building described in this case was not a warehouse even in that enlarged sense. It was not a building used for storing merchandise temporarily till it might be removed for sale or use to some other place; but a building used for keeping such miscellaneous articles as were employed in carrying on the garden and no others. It was a mere appendage to the garden and would have passed on a sale under the description of the garden as an appurtenance; whereas, if Warren had given a deed of *his warehouse* without other description, a stranger to the bargain could hardly have guessed what was intended to be sold.

The statute affects the personal liberty of the party convicted under it, and is therefore highly penal. In such case the statute is to be construed strictly in favor of the party accused. This rule does not, however, imply that courts are to look about for astute and evasive constructions such as may defeat the intention of the law; for the object of all the rules that have been laid down for the interpretation of penal as well as remedial statutes is to reach the intention of the lawgiver. Penal statutes must be construed strictly, because it must be understood the legislature did not intend that anything should be punished as a new offence which did not come plainly and clearly within the meaning of the terms that they have selected to define the new crime. It is a rule. admitting of few exceptions, and a rule which applies in full force to the present case, that to charge a defendant on a penal statute his case must be brought clearly within the proper and appropriate meaning of the terms used in the law which creates the offence. In the legal construction of the law as well as in weighing the evidence of facts the defendant in a criminal cause is entitled to the benefit of reasonable doubt, on the ground that the legislature could not have intended a de-

fendant should be convicted under the law unless the facts brought his case so plainly within the terms used as to leave no reasonable doubt.

Cases may rarely occur where restricting the meaning to the literal sense of the language used would defeat the whole object of a statute, and lead to manifest absurdity. In a few such cases it has been held that even in a penal statute the construction may extend the operation of the law beyond the strict literal meaning of the terms used; as, for instance, where a penalty is given to enforce the performance of a public duty, and a literal construction would leave no remedy for a neglect of the public duty. Such were the cases of *Fairbanks* v. *Antrim*, 2 N. H. 105, and *Pike* v. *Jenkins*, 12 N. H. 255; and see, also, *Com.* v. *Loring*, 8 Pick. 370. But the general rule undoubtedly is that the operation of a penal law is not to be extended by equitable construction beyond the strict literal meaning of the terms used in the law.

In some of the earlier cases the application of this rule requiring penal enactments to be construed strictly was pressed to an extreme, which may be supposed to have sometimes defeated the intention of the law. Courts may have been unconsciously inclined to such strictness on account of the severity with which crimes were then punished in England. The true rule, however, recognized in all the authorities that I have seen, old and recent, is, that "where the sense of penal statutes is plain, they must be literally followed; but where it is doubtful they are to be construed in favor of the supposed offender."

In the construction of English statutes, which have made stealing in buildings of certain classes, and stealing certain kinds of property, distinct offences, thus aggravating simple larceny into a higher crime, the rule requiring a strict construction of penal laws appears to have been applied with more than common rigor; perhaps, as has been suggested, the severity with which these statutory offences were punished, contributed to this strictness of construction. 1 Bl. Com. 88; Roscoe's Ev. 851; *The King* v. *Howard Foster*, 77; 3 Burns' Justice, 64; 3 Chitty's Cr. Law, 271.

The *King* v. *Howard* was an indictment for stealing in a warehouse on the statute which made privately stealing "in any shop, warehouse, coach-house or stable" a capital felony; and it was held that "a common warehouse by the river side where merchants lodged their goods for exportation," was not a warehouse within the meaning of the act, because, though the building was clearly a warehouse in one sense, it was not supposed to be within the mischief intended to be redressed by the act. It is quite clear that under the English statute, which made stealing in a warehouse a distinct offence, the building described in this case would not be regarded as a warehouse. This case of *The King* v. *Howard* is also a strong authority to the point that, in construing a statute which aggravates a larceny into a higher offence when committed in certain kinds of buildings, the words in the statute which name and describe the buildings, are construed with great strictness in favor of the party tried under the statute; the question in such cases being, not whether the defendant shall be punished under the statute or go wholly free, but

whether he shall be punished for the old offence, or be subjected to the severer penalty of the new enactment.

The authorities which relate to the rules of construction applicable to penal laws are very numerous. The following are some of them : 19 Viner's Ab., 520, 521 ; Com. Dig., Act of Parliament, 20 ; Bacon's Ab., Statutes, 9 and 10 ; *Woodbury* v. *Thompson*, 3 N. H. 197 ; *Pray* v. *Burbank*, 12 N. H. 267 ; *Com.* v. *McComber*, 3 Mass. 254 ; *Com.* v. *Barlow*, 4 Mass. 439 ; *Case of Pierce*, 16 Maine 285 ; *Abbot* v. *Wood*, 21 Maine 541 ; *Leonard* v. *Bosworth*, 4 Conn. 421 ; *Rawson* v. *The State*, 19 Conn. 292 ; *Railroad* v. *Kinney*, 8 Ind. 402 ; *Ramsay* v. *Foye*, 10 Ind. 493 ; *Case of the Enterprize*, Paine 82 ; *State* v. *King*, 12 Lou. Ann. 593.

Cases may be found which appear to be somewhat at variance with the rule that penal statutes should be construed strictly, like the Nisi Prius case of *Reg.* v. *Carter*, cited for the State, which is in conflict with another Nisi Prius case, *Reg.* v. *Sanders*, 9 Carr. & Payne 79. In some early cases the courts in Connecticut held that under their statute a school house was a dwelling house and an outhouse, and the cabin of a ship was a shop. But those decisions have not been approved in later cases, and cannot be regarded as authorities here. *State* v. *O'Brien*, 2 Root 516 ; *State* v. *Currier*, 5 Day 131 ; *State* v. *Bailey*, 10 Conn. 144.

Our conclusion is that the building described in this case was neither a warehouse nor a granary within the meaning of those terms as used in the statute.

*Verdict set aside.*