Bradbury, C. J.
The defendant was indicted for murder in the second degree for causing the death of one Edward Elliott, in the course of an attempt to.arrest the latter for the commission of a misdemeanor. The defendant was. marshal of the village of Hillsboro, in Highland county, and being put upon trial for the homicide, it became material to inquire into the authority of such officers to make-arrests without a written warrant therefor, and after the evidence had been given, the prosecuting attorney requested the court to give to the jury certain legal prop *183 ositions, the object of which was to define the authority vested by law in the marshal of an incorporated village to arrest without written warrant alleged offenders against the laws of the state or the ordinances of the village. The third proposition requested reads as follows: “If you find from the testimony that the breach of the peace did not occur in the presence of the defendant, and was over and the deceased had ceased from the commission of a breach of the peace, and that the affray was ended, and the deceased was not attempting a continuation of the breach of the peace, but was about his peaceful and lawful avocations when the defendant arrived at the place where the affray had taken place, and the defendant did not attempt to make the arrest until he had gained such knowledge as he possessed of the affair from inquiries made of third persons, such arrest or attempted arrest was unlawful, and the deceased had a right to resist such arrest, or attempted arrest, and the defendant under the circumstances was himself in the performance of an unlawful act for the consequence of which he must be held responsible.” This proposition the court- refused to give, and instead gave substantially its converse in the following terms: “It is not disputed that a sliort time before Elliott wTas killed he had a quarrel in Doorley’s saloon with one William Eakin, and knocked him down; that was a violation of one of the ordinances of Hillsboro. The fact that Eakin called him a liar was no justification in law for knocking him- down. If you find from the evidence that within a short time after this occurred—as soon as possible after it occurred—Eewis was sent for to arrest Elliott, that Eewis as marshall of the town went at once in pursuit of Elliott; that Elliott, on seeing Eewis approach, started to leave the town in a hurried manner; that Eewis pursued him, then I charge you that Eewis upon overtaking Elliott had the lawful right to arrest him, notwithstanding he had no warrant for that purpose.”
To the charge as given, and to the refusal to charge as requested, the prosecuting attorney excepted, and embodying them in a bill of exceptions has brought them to this *184 court for review by virtue of sections 7305 and 7306, Revised Statutes.
That the defendant was marshal of the village of Hillsboro; did not witness the affray nor procure from a magistrate a warrant for the arrest of the deceased, are conceded facts. In addition to this the testimony given in behalf of the state tended to prove that the deceased had participated in an affray in a saloon within the village of Hillsboro, on the day of the homicide; that the defendant was absent and did not hear or see any part of the affray; that a few minutes thereafter he received information that a breach of the peace had been committed, and at once weirt to the saloon where it had occurred; that when he reached the saloon, the parties to it had gone and good order -had been restored; that upon inquiry the defendant was told that an affray had been committed, in which the deceased had participated, and ascertaining the direction taken by the deceased, the defendant, without obtaining a warrant, immediately pursued, soon after overtook and proceeded to-arrest him for that offense; that the deceased, though having knowledge of the official character of the defendant, resisted the arrest, and in the resulting struggle was shot, and killed by the defendant.
The authority of peace officers to arrest without a warrant from a magistrate is a subject that has received the attention of the courts and text-writers from an early period in the history and development of the common law in both England and America. Some of the earlier English authorities,, while the prerogatives of the government were more highly considered than at a later day, maintained the power. (2 Hale P. C. 90.) But even then the doctrine met with a resistance which finally overturned it. (1 East P. C. 305.) Regina v. Tooley, 2 Lord Raymond, 1301, where Ford Holt,. in delivering the opinion of the majority of the court, is reported as saying: “The prisoners in this case had sufficient provocation; for if one be imprisoned upon an unlawful authority, it is a sufficient provocation to all people out of compassion; much more where it is done under a color of justice, and where the liberty of the subject is invaded, *185 it is a provocation to all the subjects of England. He said, that a constable cannot arrest, but when he sees an actual breach of the peace, and if the affray be over, he cannot arrest.” See also 2 Hawk. Crim. Haw, 13, sec. 8. The later English authorities seem to settle the law there in accordance with the views of Lord Holt. Coupey v. Henley et al., 2 Esp. 540; Baynes v. Brewster, 2 A. & E. (N. S. ) 375; Regina v. Mabel, 9 C. &P. 474; Timothy v. Simpson, 1 C. M. & R. 757; Grant v. Moser, 5 Mann. & G. 123; 1 Russ, on Cri. (8th ed.) 410, 805. In the case of Cook v. Nethercote, 6 C. & P. 741, AlüBRSON, B., in summing up says: “If, however, there has been an affray, and that affray were over, then the constable had not and ought not to have the power of apprehending the persons engaged in it; for the power is given him by law to prevent a breach •of the peace; and where a breach of the peace had been committed, and was over, the constable must proceed in the same way as any other person, namely; .by obtaining a warrant from a magistrate.” Id. 744.
The American authorities establish the same rule. Roberts v. The State, 14 Mo. 138; The People v. James Haley, 48 Mich. 495; Phillips v. Trull, 11 John. 486; Pow v. Beckner, et al., 3 Ind. 475; 1 Bishop on Cr. Procedure, 183, 184; Quinn v. Heisel, 40 Mich. 576; In re. Sarah Way, 41 Mich. 299; Commonwealth v. Carey, 12 Cush. 246.
'his court has held that a city council may lawfully authorize police officers to arrest upon view any person found in the act of violating the ordinances of the city, made for the preservation of good order and public convenience. White v. Kent, 11 Ohio St. 550. Also that the officer in making arrest upon view is not bound to disclose his official character. Wolf v. State, 19 Ohio St. 248. And that it is lawful to arrest, without warrant, one who is unlawfully carrying a concealed weapon, though the officer had no previous knowledge of the fact if he acted bona Jide upon knowledge which induced an honest belief that the person was violating the law in this respect. Ballard v. State, 43 Ohio St. 340. But the facts in those cases disclose that the person arrested was taken while in the act of *186 committing the offense for which he was apprehended, while in the case under consideration the evidence tended to show that the defendant acted upon information only, and that the affray was over, and public order restored before he attempted to pursue or arrest the supposed offender!! The section of the Revised Statutes that defines the powers-^ of marshals within the municipalities of the state, reads as follows:
“Section 1849, Revised Statutes. He shall suppress all riots, disturbances, and breaches of the peace, and to that end may call upon the citizens to aid him; he shall arrest all disorderly persons in the corporation, and pursue and arrest any person fleeing from justice in any part of the state; he shall arrest any person in the act of committing any offense against the laws of the state, or the ordinances of the corporation, and forthwith bring such person before; the mayor, or other competent authority, for examination or trial; and he shall re'ceive and execute any proper authority for the arrest and detention of criminals fleeing or escaping from other places or states.”
This section imposes on the marshal of a municipality important public duties, and clothes him with extensive powers in respect to their discharge He is, by the terms of this section, among other duties which it enjoins, required to “pursue and arrest any person fleeing from justice) in any part of the state;” but whether with or without war- i rant the section is, in terms, silent. He is thus clothed with authority throughout the whole state, which, but for the statute under consideration, would be limited to his municipality. What is found in the other language of this statute that indicates a legislative purpose to dispense with a warrant in cases, where, according to the principles of the common law, or by other statutory provisions, one would otherwise be necessary? We can discover nothing. Statutes of this class, though enacted in the interests of public order, yet derogate from the liberty of the citizen, and if not strictly construed, which the weight of authority seems to hold they should be, yet are not to be extended by a loose or liberal construction. Bishop on Cr. Pr. 184; *187 Ramsey v. Foy, 10 Ind. 493; State v. Dale, 3 Wis. 795. The authorhy should be limited to the necessity for its exercise; where an affray is in progress, or an offense in the course of commission, in the presence of an officer, his duty is to prevent its continuance or completion; to accomplish this effectually the power to, at once, apprehend the offender is necessary; under such circumstances to stay his hand until a warrant could be obtained would paralyze his power to prevent crime, and maintain the public peace. So, perhaps, the legality of an arrest without warrant might be maintained where the affray or other misdemeanor had already been completed when the officer appeared, if the offender was present, and public order had not yet been completely restored. Where, however, the offense is an acomplished fact, its prevention is no longer possible, and if public order has been fully restored before the officer appears, the power to arrest without warrant for a mere breach of the peace or other minor offense is no longer necessary, for the end—to maintain the public' peace—for which such authority is given, is no longer attainable.
Even where such an offense has been committed in the presence of an officer, his power to arrest the offender without warrant should be promptly exercised or it will be lost. 1 Am. & Eng. Ency. of Raw, 784; Queen v. Marsden, 1 Law Reports, Crown Cases Reserved, 131; Clifford v. Brandon, 2 Campb. 358.
In one case it was held that the officer must proceed at once in the matter, and follow it up until the arrest is accomplished, and a delay of five hours was fatal to the authority. Wahl v. Walton, 30 Minn. 506. In Regina v. Walker, Dearsly’s Crown Cases, 358, two hours had elapsed before the arrest was attempted, and the court for hearing Reserved Crown Cases, speaking by Pollock, C. B., said: “We are of opinion that the apprehension was not lawful. The assault for which the prisoner might have been apprehended was committed at another time and at another place; there was no continued pursuit of the prisoner.” Id. 359. In Meyer v. Clark, 41 N. Y. Superior Court Reports, 107, an interval of a few minutes, where the officer in the *188 meantime had gone away and made the arrest on his return, rendered it illegal.
/The authorities establish the rule that the powers of peace officers to arrest without warrant for a mere misdemeanor, should be made as definite and certain as .may be consistent with an efficient discharge of his duty to maintain public order, and extended no further than may be necessary to that end. Where he acts upon view, he is required to act promptly. This may introduce .an element of indefiniteness;. for whether he is prompt or not, must depend to some extent upon the circumstances in which he is placed. This, however, is unavoidable, unless it should be held that he must act at once or lose the power to arrest, and this degree of promptness it seems is not required. Taylor v. Strong, 3 Wend. (N.Y.) 384; Shanley v. Wells, 71 Ill. 78; 1 Am. & Eng. Ency of Law, 737.
However, to extend his power of arrest, in the class of offenses under consideration, so as to authorize him to act solely upon information obtained from third persons, not only as to whether an offense had been committed, but also as to the person who had committed it, is not only unnecessary to enable him to preserve public order, but would render still niore indefinite and uncertain the extent of his authorityX
How s6on after the offense had been committed should the information be communicated, to authorize the officer to act without the sanction of a warrant — and how soon thereafter must he proceed to make the arrest? A satisfactory answer to these questions is not readily found. If such power was absolutely necessary to preserve the public peace, an objection to it, founded upon its • extent and uncertainty, should yield to that necessity; but it may well be doubted whether this power of apprehension for a mere misdemeanor, upon information only, and without warrant, in view of the temper and notions of our people in regard to their personal rights, and the opinion, so often; however,, unjustly entertained by the public, respecting the discretion of a large class of peace officers, would not tend to disturb, rather than promote, the public peace.
*189 We think, therefore, the statute under consideration, even if it stood alone, should not be construed to authorize a marshal of a city or village to arrest without warrant for a mere misdemeanor not committed in his presence.
The section (1849 Revised Statutes,) under consideration, however, does not stand alone. The General Assembly, by section 7129, Revised Statutes, has spoken upon this subject. That section, (7129) provides that “ A sheriff, deputy sheriff, constable, marshal or deputy marshal, watchman, or police officer, shall arrest and detain any person found violating any law of this state, or any legal ordinance of a city or village, until a legal warrant can be obtained.”
This section, and section 1849, Revised Statutes, which has been under consideration, are in pari materia, and should be construed together as well as in reference to the established rules of the common law.
The general assembly, by section 7129, Revised Statutes, must be deemed to have prescribed the rule relating to the subject it was then considering, namely; the circumstances under which an arrest may be made without warrant, while by section 1849, Revised Statutes, it prescribed the general duties and powers of marshals of our cities and villages, and as there is no inconsistency between _ the two, neither statute should be regarded as conflicting with the other; but if there were such conflict, each should be deemed paramount in respect to the particular subject to which it specially relates. Section 7129, Revised Statutes, provides for the arrest of persons “found violating” a law or ordinance. Found by whom? The statute does not expressly declare; but when the rules of the common law upon this subject are considered, it is clear that the legislature meant, found by the officer who attempts to make the arrest.

Exceptions sustained.