NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2013-0623


THE STATE OF NEW HAMPSHIRE

v.

VINCENT COOPER

Argued:  May 7, 2015
Opinion Issued:  September 22, 2015


Joseph A. Foster, attorney general (Lisa L. Wolford, assistant attorney general, on the brief and orally), for the State.


Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


CONBOY, J.  The defendant, Vincent Cooper, appeals his convictions, following a jury trial, for armed robbery and conspiracy to commit armed robbery.  See RSA 636:1 (2007); RSA 629:3 (2007).  He argues that the Superior Court (Tucker, J.) erred by allowing the State to play an audio recording of a 911 telephone call at trial, and by allowing the State, in closing argument, to comment on a fact not in evidence and to misstate the burden of proof.  We affirm.

The defendant's convictions arise out of an armed robbery that occurred in Dover on July 26, 2010. The defendant was charged with armed robbery, in that, he, acting "in concert with David McLeod and/or Warren Griffen, in the course of committing a theft from [the victim], knowingly use[d] physical force on [the victim] and [the victim] was aware of such force and McLeod was actually armed with or reasonably appeared to the victim to be armed with a deadly weapon, a firearm." The defendant was also charged with conspiracy to commit armed robbery in that, with the purpose that the crime of robbery be committed, he agreed with McLeod and/or Griffen "to commit or cause the commission of such crime" and "at least one of the following overt acts was committed by one of the [conspirators] in furtherance of the conspiracy": (1) the defendant "drove McLeod and [Griffen] to [the victim's] residence to rob [the victim] of prescription pills"; (2) the defendant "provided McLeod with a firearm" upon arriving at the victim's residence; (3) "McLeod robbed [the victim]"; and (4) the defendant drove McLeod and Griffen away "after McLeod returned from the robbery."

At trial, the State sought to introduce into evidence the audio recording of a 911 telephone call made by the victim. The defendant objected, arguing that the victim's statements were inadmissible hearsay and that, because the victim was not available to testify at trial, their admission would violate his constitutional right to confront the witnesses against him. The trial court ruled that the statements were admissible as excited utterances and that their admission did not violate the defendant's right to confront the witnesses against him. Thereafter, the State played the 911 recording for the jury.

During the 911 call, the victim told the operator that somebody with a gun and pepper spray had "just tried to break in the house." The victim was unable to identify the suspect, but stated that he was wearing a "[blue] bandana, black hat," and "black pants." He also told the operator that "[t]hey were driving a tan Crown Vic, I think, or something" and described the vehicle's direction of travel after the incident. The victim said that the suspect had pepper sprayed him, but that the victim "had a stick, and . . . started whacking [the suspect]." The victim stated that his eyes were burning from the pepper spray and told the operator that he needed to go to wash his face. At that point, the operator told the victim that an ambulance was on its way and the call ended.

The State also presented the testimony of McLeod. McLeod testified to the following: On July 26, 2010, he met with the defendant and Griffen in the parking lot of his then-girlfriend's apartment. The defendant was driving a recently purchased "tan Buick" with temporary license plates. Griffen told McLeod that he wanted to rob the victim and that McLeod was going to do it. The defendant then drove them to the victim's apartment to rob the victim of pills. When they arrived, the defendant took out a gun and handed it to McLeod, and told him "just do it and get it over with."

2

McLeod then ran to the victim's apartment and "tried to barge in," but the victim "had a two by four" that he "shoved . . . at the door . . . [and] got the door closed." Before the victim closed the door, McLeod tried to pepper spray him; however, at some point, McLeod dropped the can of pepper spray. McLeod then ran down the stairs and, as he did so, he dropped the gun. He picked up the gun and ran back to the car. When he got into the car, the defendant was in the driver's seat and Griffen was in the front passenger seat. The defendant then drove McLeod back to his then-girlfriend's apartment.

McLeod also testified that, in exchange for his testimony against the defendant, he received immunity from prosecution for his involvement in the robbery as well as a more lenient sentence on other unrelated charges, including a separate robbery that occurred the same night as the robbery for which the defendant was charged.

During the State's closing argument, the prosecutor argued that the jury should not discredit McLeod's testimony simply because he received a reduced sentence on the other robbery charge in exchange for his testimony in this case. The prosecutor stated that other witness statements and physical evidence supported McLeod's testimony. For example, the prosecutor told the jury that Griffen's fingerprints were found on evidence located near the scene of a car crash that occurred shortly after the other robbery involving McLeod. However, in fact, there was no evidence admitted at trial that Griffen was the source of the fingerprints. The prosecutor also discussed the concept of reasonable doubt, telling the jury: "It doesn't mean beyond any doubt, and it doesn't mean beyond all doubt. It certainly doesn't mean you give the Defendant the benefit of the doubt." The jury subsequently convicted the defendant on both charges. This appeal followed.

I.      911 Telephone Call

The defendant first argues that the trial court erred when it permitted the jury to hear the audio recording of the victim's 911 telephone call. He contends that the victim's statements in the 911 call constituted inadmissible hearsay, see N.H. R. Ev. 802, and that their admission violated the Federal Confrontation Clause, see U.S. CONST. amends. VI, XIV.

The State disagrees that admission of the recording was error, but argues that even if it were, any error was harmless beyond a reasonable doubt. For the purposes of this appeal, we assume, without deciding, that admitting the audio recording of the 911 call was erroneous, and we agree with the State that any error was harmless. See State v. Hernandez, 159 N.H. 394, 401-02 (2009); see also Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (recognizing that a violation of the Federal Confrontation Clause is subject to harmless-error analysis); State v. Ramsey, 166 N.H. 45, 47-48 (2014) (applying harmless error

review to admission of evidence assumed to be in violation of New Hampshire Rules of Evidence and State and Federal Confrontation Clauses).

"It is well settled that the erroneous admission of evidence is harmless only if the State proves, beyond a reasonable doubt, that the verdict was not affected by the admission." State v. White, 155 N.H. 119, 127 (2007) (quotation omitted). "The State bears the burden of proving that an error is harmless." Ramsey, 166 N.H. at 47 (quotation omitted). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." White, 155 N.H. at 127 (quotation omitted); see Van Arsdall, 475 U.S. at 684 ("Whether [Confrontation Clause] error is harmless in a particular case depends upon a host of factors . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.").

Here, the alternative evidence of the defendant's guilt was overwhelming. McLeod directly implicated the defendant in the robbery, stating that the defendant picked him up in a "tan Buick" with temporary license plates and drove him to the victim's apartment for the purpose of committing a robbery. McLeod further testified that the defendant gave him a gun, and told him "just do it and get it over with." McLeod also described the details of the robbery. For example, he explained how the victim "had a two by four" and "shoved it at the door . . . [and] got the door closed," and that he tried to pepper spray the victim but dropped the can of pepper spray. As he fled the scene, he dropped the gun, picked it up, and ran to the car. The defendant then drove him back to his then-girlfriend's apartment.

Sergeant Harrington of the Dover Police Department testified that she spoke with the defendant shortly after the robbery and that he told her that he had "just purchased" a tan Buick Park Avenue. He stated that, on the day of the robbery, he drove around Dover the entire day, and that no one else drove his vehicle that day or night. He also said that he was familiar with McLeod and Griffen "from prior contacts with them."

Further, the victim's statements on the 911 call were merely cumulative because McLeod's testimony was corroborated by evidence other than the victim's statements. Cf. Ramsey, 166 N.H. at 48 (concluding that, although case essentially presented credibility contest between defendant and victim, any error in failing to allow defendant to inquire into victim's allegedly false statements on driver's license application was harmless where defendant had other opportunities to impeach victim's credibility). Detective Khalsa of the

Dover Police Department testified that, on the day of the robbery, he responded "to a report of an assault where the victim was pepper sprayed and a gun had been pulled on him." He stated that "[t]he call came out with the suspect fleeing in a tan vehicle." Khalsa testified that, upon arriving at the victim's apartment he noticed "a can of pepper spray on the threshold of the doorway and there were two live [not fired] . . . bullets on the stairway."

In addition, the victim's downstairs neighbor testified that, on the date of the robbery, she returned home and observed a vehicle with a "[r]ed and white temporary paper [license] plate" parked near her driveway. She described the vehicle as "a lightish, greenish, tan" colored "full-sized, four door sedan." She testified that, shortly after she pulled into her driveway, she observed the vehicle leave and then return "within . . . five to seven minutes." When it returned, she saw "something in the back that looked like at least one other person." She stated that, approximately 15 to 20 minutes later, she saw an ambulance parked on her street.

The victim's girlfriend at the time of the robbery testified that the victim lived with her and that, on the day of the robbery, she received a telephone call at work from someone telling her that "there was police and tape around [her] house." She stated that she called the victim and learned that he was at the police department because something had happened at their home. She also testified that she knew of a relationship between the victim and McLeod whereby the victim had "hooked" McLeod up with "[p]ills." She explained that she spoke to the police about the robbery and that she suspected McLeod of being responsible.

Moreover, the victim's statements in the 911 call in relation to the above-described evidence were inconsequential. Indeed, the victim did not directly implicate the defendant in the robbery; his statements merely helped to explain the circumstances of the robbery. See Ronk v. State, No. 2011–DP–00410–SCT, 2015 WL 2168283, at *15 (Miss. May 7, 2015) (finding admission of bank statements harmless, in part, because statements did not directly implicate defendant, but helped explain the investigation of victim's death). Nonetheless, the defendant maintains that admission of the 911 call was not harmless because "[t]he central issue in the case was McLeod's credibility" and "[t]he only evidence the State had to corroborate McLeod's testimony that a crime occurred was [the victim's] statements on the 911 call that someone had tried to break into his apartment." However, as discussed above, McLeod's testimony was corroborated by evidence other than the victim's statements in the 911 call. Accordingly, based upon all of the evidence adduced at trial, we hold that the State has met its burden of proving that any error by the trial court in allowing the 911 call to be played for the jury was harmless beyond a reasonable doubt.

5

II.    Prosecutor's Statements During Closing Argument

The defendant next argues that the trial court erred by allowing the State, in its closing argument, to argue a fact not in evidence and to misstate the burden of proof.  The defendant contends that the prosecutor's comment that Griffen's fingerprints were found on evidence located near the scene of a car crash that occurred shortly after the other robbery involving McLeod was improper because no such evidence was admitted at trial.  He further contends that the prosecutor misstated the beyond-a-reasonable-doubt standard.  Because the defendant did not object to these statements at trial, he argues under the plain error rule.

"The plain error rule allows us to exercise our discretion to correct errors not raised before the trial court."  State v. Mueller, 166 N.H. 65, 68 (2014) (quotation omitted); see Sup. Ct. R. 16-A ("A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court.").

> For us to find plain error:  (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights.  If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion:  the error must seriously affect the fairness, integrity or public reputation of judicial proceedings.  This rule is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result.

Mueller, 166 N.H. at 68 (quotation and ellipsis omitted).

The State does not dispute that both of the prosecutor's statements constituted error.  We agree that the prosecutor wrongly stated that Griffen's fingerprints were the ones found on certain evidence located at the scene of a car crash following the second robbery.  Although counsel is afforded wide latitude during closing argument, it is well settled that counsel may not argue facts that have not been introduced into evidence.  State v. Lake, 125 N.H. 820, 822 (1984).  Because, as the State concedes, there was no evidence that any fingerprints found were Griffen's, the prosecutor clearly erred by stating that there was such evidence.

We also conclude that the prosecutor erred by stating, during closing argument, that, "It doesn't mean beyond any doubt, and it doesn't mean beyond all doubt.  It certainly doesn't mean you give the Defendant the benefit of the doubt."  The State must prove all of the elements of the crime charged beyond a reasonable doubt.  State v. Walsh, 139 N.H. 435, 437 (1995).  This means that the defendant in a criminal case is entitled to the benefit of reasonable doubt.  See State v. Germain, 165 N.H. 350, 358-59 (2013)

6

(discussing the beyond-a-reasonable-doubt standard in context of circumstantial evidence); State v. Wilson, 47 N.H. 101, 106-07 (1866) ("In the legal construction of the law as well as in weighing the evidence of facts the defendant in a criminal [case] is entitled to the benefit of reasonable doubt, on the ground that the legislature could not have intended a defendant should be convicted under the law unless the facts brought his case so plainly within the terms used as to leave no reasonable doubt."); see also Victor v. Nebraska, 511 U.S. 1, 8 (1994) (noting, with approval, jury instruction that if "there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal").

Nonetheless, under the circumstances here, we do not find that the errors require reversal. Because the defendant did not object to the prosecutor's statements at trial, and the trial court never ruled on the propriety of the statements, the pertinent question is whether the trial court erred by failing to sua sponte strike the statements. See State v. Rawnsley, 167 N.H. 8, 12 (2014); State v. Noucas, 165 N.H. 146, 161 (2013). Assuming, without deciding, that it was error for the trial court not to sua sponte strike the prosecutor's comments, and that the error was plain, we conclude that the error did not affect the defendant's substantial rights. See Mueller, 166 N.H. at 70.

"Generally, to satisfy the burden of demonstrating that an error affected substantial rights, the defendant must demonstrate that the error was prejudicial, i.e., that it affected the outcome of the proceeding." Id. (quotation omitted). This third prong of the plain error test is similar to the harmless error analysis we use to evaluate preserved claims of error, with one important distinction: the State bears the burden under harmless error analysis, but the defendant bears the burden under the plain error test. Id. We will find prejudice under the third prong when we cannot confidently state that the jury would have returned the same verdict in the absence of the error. Id.

The defendant argues that the trial court's failure to sua sponte strike the prosecutor's statement about the fingerprint evidence was prejudicial because, by "arguing facts not in evidence, the State improperly vouched for McLeod's testimony, by saying that forensic evidence supported his version of events." He further maintains that, "[i]n misstating the burden of proof, the State unfairly argued that [the defendant] was not entitled to the benefit of the doubt the jury could very well have had about McLeod's testimony." He contends that "[t]he cumulative effect of the improper arguments likely had an effect on the jury's verdicts." We disagree.

As discussed above, McLeod's testimony regarding the robbery was corroborated by the testimony of other witnesses. Moreover, the defendant's counsel argued at trial that McLeod committed both the robbery for which the defendant was charged as well as the later robbery. He contended that McLeod

7

implicated the defendant in the first robbery only because he was "looking at decades in prison" and needed to "find a way out." He further argued that there "was a common theme that resulted from the evidence in this case, and that is that McLeod and Griffen are quite connected with one another" and "are involved in a lot of criminal activity together." In his closing statement, he maintained that McLeod "committed this armed robbery . . . [McLeod] was involved in this armed robbery with . . . Griffen." During his cross-examination of Detective Burt of the Dover Police Department, who examined the evidence at the scene of the car crash following the second robbery, defense counsel asked Burt whether a backpack he found at the scene, which contained the evidence the State argued was the source of Griffen's fingerprints, was Griffen's. Contrary to the defendant's suggestion, defense counsel may have had strategic reasons for failing to object to the prosecutor's statement regarding Griffen's fingerprints: defense counsel may have concluded that the prosecutor's statement supported his theory of the case – that McLeod committed both robberies, and that McLeod and Griffen were the ones involved in criminal activity, not the defendant. See Noucas, 165 N.H. at 161-62 (concluding that trial court's failure to sua sponte strike witness's testimony or issue a curative instruction did not amount to plain error and noting that defense counsel may have had strategic reasons for not objecting to testimony).

With regard to the prosecutor's statement that the jury need not give the defendant "the benefit of the doubt," we note that this statement was made only once. Cf. State v. Bujnowski, 130 N.H. 1, 6 (1987) (concluding that prosecutor's intentional, repetitive misconduct in closing argument did not constitute harmless error). In addition, the challenged statement was immediately preceded by the prosecutor's statement that "[t]he Judge is going to instruct you on [the beyond-a-reasonable-doubt standard]." The prosecutor then stated, "But essentially what I want you to keep in mind is this: It doesn't mean beyond any doubt, and it doesn't mean beyond all doubt. It certainly doesn't mean you give the Defendant the benefit of the doubt." In context, the prosecutor's statement could have been an attempt to explain that any benefit of the doubt given to the defendant must be reasonable. Nonetheless, a statement that a criminal defendant should not be given the benefit of the doubt is never proper argument.

However, the trial court's instructions to the jury cured any risk of prejudice to the defendant from the prosecutor's two erroneous statements. The jury was instructed at the start of trial that "[y]ou decide what the facts are, what the truth is and base your verdict on your findings of fact." After closing arguments, the court instructed the jury that:

> The evidence in this case consists of the sworn testimony of the witnesses both on direct and cross-examination regardless of who may have called those witnesses and the exhibits that have been received into evidence regardless of who may have produced

8

them.  <u>Arguments, statements and questions by the lawyers are not evidence.</u>  Questions asked by the lawyers and what the lawyers have said in their opening statements, during their closing arguments and at other times during the trial are intended to help you interpret the evidence, but it is not evidence.  <u>If the facts as you remember them differ from the way the lawyers have stated them, your memory controls.</u>

(Emphases added.)

The trial court also instructed the jury that, "If during the course of the trial the attorneys mention a principle of law that is inconsistent with or differs from what I say the law is, you must disregard what the attorneys said about the law.  It is your duty to follow these instructions during your deliberations."  The court later explained:

A reasonable doubt is just what the words would ordinarily imply.  The use of the word "reasonable" means simply that the doubt needs to be reasonable rather than unreasonable.  It must be a doubt based on reason.  It is not a frivolous or fanciful doubt, nor is it one that can easily be explained away.  Rather, it is such a doubt, based upon reason, as remains after consideration of all of the evidence that the State has offered against it.  The test you must use is this:  If you have a reasonable doubt as to whether the State has proved any one or more of the elements of the crime charged, you must find the Defendant not guilty.  However, if you find that the State has proved all of the elements of the offense charged beyond a reasonable doubt, you should find the Defendant guilty.

<u>See</u> <u>State v. Wentworth</u>, 118 N.H. 832, 838-39 (1978).  Each juror was given a copy of the trial court's final instructions.  "Juries are presumed to follow instructions."  <u>State v. Willis</u>, 165 N.H. 206, 225 (2013) (quotation omitted).

Accordingly, in light of the defendant's theory of the case, the alternative evidence corroborating McLeod's testimony, and the jury instructions, we conclude that the defendant has failed to show that any error by the trial court in failing to <u>sua</u> <u>sponte</u> strike the prosecutor's erroneous statements affected the outcome of the proceedings.  We, therefore, hold that the defendant has failed to satisfy the third prong of the plain error test.

Nonetheless, we take this opportunity to reiterate warnings we have set forth before.  <u>See</u> <u>Lake</u>, 125 N.H. at 822-23; <u>State v. Preston</u>, 121 N.H. 147, 151 (1981).  We strongly "caution prosecutors to avoid misstatements of evidence, improper argument, or other improper conduct."  <u>Lake</u>, 125 N.H. at 822 (quotation omitted).  Although the defendant has failed to demonstrate

9

prejudice in this instance, we do not condone the conduct by the prosecutor, who is not counsel on appeal.

Finally, any issues raised in the defendant's notice of appeal, but not briefed, are deemed waived.  See State v. Blackmer, 149 N.H. 47, 49 (2003).

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.